Good afternoon, Your Honors. Good afternoon. I'm Bob Nichols for Mr. Day, Bynum. I appeared before Your Honors in a similar case maybe 10 months ago. Substantively, though, the cases are quite different. In the Jones case, which was another attorney's fee case, the district court there, the defendants objected to all the claims on the merits, and the judge rejected jurisdiction and dismissed those claims. In this case, the complaint included the LTD issue. AT&T agreed that LTD, HealthCobra, and pension were at issue up until August of 2008. Then they changed their mind and asked for dismissal. The court rejected their request, retained jurisdiction, and ruled on all those issues. That's as far as the merits are concerned. With respect to the first interim fee order, this was the Magistrate Seberg's order. They've objected that it's not appealable, or it had to have been appealable five years ago when it was rendered. The cases I've cited say that these are interim fee orders, they're appealable with the final judgment, and they're appealable as any other order or judgment the district court would be. If a district judge had issued that interim order, it would have been appealable upon the final amended judgment. It was five years, but it was five years between the first interim order and the final amended judgment. With respect to Judge Seberg's rate declaration, he found that 500 was a market rate for me, that the current market rate was 500, but that since I had previously charged 400 during the early parts of the suit, or during 2007, and AT&T would not object to 450, that he was going to find a reasonable market rate of 450 for me. I think that that violates Moreno and Welch as far as the district court being required by those cases and its discretion being limited by those cases to the current market rate. With respect to the time award on the first interim fee award. Kagan. I couldn't. I think I missed that. Are you saying with respect to the time award or the hours award, Your Honor? I apologize. That's all right. The magistrate cut the time by about 94 hours, which was 28 percent. And the St. Moreno cost insure, which I cite in my brief, say that you're not allowed to reduce time by large blocks of time like that unless the defendant specifies what time is excessive or what time is unnecessary. And the court also specifies it. The defendants declined to specify. They made a few arguments, which the court, the magistrate judge did not accept, but they declined to specify at oral argument anything. They just said this is his time is more than an average of three cases, and you should reduce it. The magistrate reduced it to the average of those three cases. The cost of case or the sure case prohibits that. With respect to the second interim fee order, there were several issues involved. The legal issue on the LTD portion, the magistrate denied the fees as to the LTD portion of the remand because the court could have dismissed the claim. But the court did not dismiss it. It retained jurisdiction. And though... NAFTALI I have a question about that. Early on, I think with prior counsel, there was there was an exchange between the plan and it was a pretty clear computer entry that the administrator indicated that Daye would not be eligible for long-term disability until he satisfied the short-term disability. Bye. That's why they did, Your Honor. When they said, nine days eh. The defendant requested that Daye submit an application for long-term disability and his lawyer refused. Is that right? That's incorrect. The first lawyer did attempt to file an application for LTD during the first appeal period. During the STD remand period, we requested that we be allowed to file an LTD application during that time. AT&T at first refused. Then about 40 days into the, the, the, the, and we requested because we needed to get more medical. They refused. And then about 40 days into the remand, they said, okay, you can do this, but we, we need you to give us everything within nine days. Nine days. We knew we couldn't do that. And they said that was too, too unreasonable time to sit around. Very unreasonable. And, and there were two district court cases which, in which the court in one had remanded the LTD. You're right. Remanded the LTD issue even though the STD issue, the STD had been terminated. Well, I can understand in reading the correspondence that you all had a dispute about those two cases and about whether the LTD application was going to be premature, whether it was due or not. Yes, ma'am. But I, I couldn't see a reason for the plaintiff to, to not file it. The, not, not file it before the litigation? They refused, they, they refused to allow it. Well, okay, so what I saw is, then that takes me back to the first computer log entry that I mentioned. Is there anything other than that? There are two computer logins. There's Mr. Silver, the prior counsel's declaration, in which he said he, he attempted to, to do it and they refused to, to let him file it. There is all the medical and the, the first appeal and in the remands that show Mr. Day was totally, totally disabled from any occupation. That's different. That goes to the merits of whether he was entitled to long-term disability. I'm going to the exhaustion issue. I'm looking to try to figure out where, what the evidence is. AT&T, of course, took the position that your client didn't file that long-term disability application. And I think your response is that they wouldn't let him. They wouldn't let him. And under the regulations and the cases, if you refuse to let somebody file an application or if your plan is designed in such a way that it impedes filing or processing applications, exhaustion is not required. Okay. So essentially a futility argument. Yes, ma'am. Or they got in your way. And the evidence of that, again, I want to make sure I'm not missing anything. Yes, ma'am. There's the computer log entry that I read and then there's a, I think you're right, there's a declaration of counsel. By Mr. Silver. Anything else? Our letters, my letters to AT&T counsel during the STD remand requesting that we be allowed to file an LTD application at that time and also saying we need time, we need a decision. Are you going to allow us to do this? And at first they said no. Well, that's when you got to a dispute about the scope of the remand. I think I understand your answer to my question. Thank you. And with respect to this issue, Your Honor, these LTD benefits were reinstated. The McElwain case in this circuit allows fees if you get a reinstatement after filing a suit. And the White case was a similar case. It allowed reinstatements merely on getting a remand. And in White, there had been an ineffective notice of a time to appeal under the regulations and they said we're going to remand. We're not going to dismiss the case. Here, Mr. Day was denied the right to file his application prior to filing suit. And the regulations require, require that. They say refusing to let somebody do that is not a fair and reasonable claims process. With respect to, with respect to the Health and COBRA issues, AT&T, oh, and by the way, our complaint sued for LTD benefits. And in the joint case management statement, they agreed that they were at issue. With respect to the Health and COBRA issue, AT&T agreed in the joint case management statements that they were at issue and that they were automatic, that if you got LTD benefits or STD benefits, you were automatically entitled to health benefits. They later objected, asked for a dismissal of those issues. The court refused. And they did not appeal that. With respect to the pension offset remand, we raised this in the district court and we raised it in our fee award, in our fee application. The court did not address it. Well, you didn't prevail on that issue. We lost on that issue. Is it your position you're entitled to fees anyway? Ma'am, yes, ma'am, because of the Sloan case in this circuit, as well as the Hensley-Vieckerhart case, which says if you've got a lot of issues with a common core and they're related, and these are related to LTD benefits, health, income, or how much they were because of the offset, if they're related issues, if you lose one, you're still entitled to your time on that issue. For one thing, it's just impossible to separate them. But even if you could, the courts say, the Smith case also says, you're entitled to fees on issues lost. It may not be easy to separate, but at some point we separate. Otherwise, if you were to win on one issue, you'd win on the whole ball of wax, and that's not the law. Your Honor, I apologize. My hearing aids started acting up on the trip down, and I don't have them. It's echoey in here. I'm just saying that it is – it can be difficult to separate sometimes. Yes, ma'am. But you – but the court is required to separate. Otherwise, the rule would be that if you win on one issue, you win on them all. It depends on how you define the core issue. Your Honor, I – I – Why was the courts – why was it unreasonable for the court to not award fees on the – on the issue where you did not prevail? Oh, because under Webb v. Sloan, the test is whether you're entitled only on related issues. You're entitled to fees on related issues lost. Mr. Day's position is these issues were all related. Well, sir, but the whole case is related. I mean, the whole case is related. Well, in that case, we should get fees, is what Webb says, Your Honor. Well, all right. If they were unrelated, we would not be entitled to fees. But – but Webb has a two-part case, and it's an either-or. It's an – it's – if either the facts are similar or the legal issues are similar, they're related. So with respect to – with respect to the – the motion for summary judgment time on the pension offset is a very perfuse motion. We – we appealed in, I think, 2010 the fact that the district court did not allow us to file a motion on anything – or, excuse me, on the motion for summary judgment. It just issued a two-sentence judgment saying each side will bear its own fees. The – a year after our second interim fee – fee order was issued, the Ninth Circuit ruled and kind of did not really address that issue and said, well, if you're asking for fees on this, you lost this issue. However, we weren't asking for fees on the merits of the – the attorney's fees issue. We'd never filed a motion. We were just asking for the right to file a motion on that issue. That – but that happened a year after this appeal. With respect to pre-judgment interest, the two legal issues involved, essentially one of the issues is, is pre-judgment interest allowed on amounts recovered or only on amounts where there's a judgment? Now, there was no judgment in this case awarding anything. STD, LTD, COBRA, anything. These were all reinstated. Blankenship uses the word award in passing, but I can't find any case that's actually addressed the issue. Is it – do you have to get a judgment to get pre-judgment interest, and it's only the amount of judgment, or is it on recoveries? Hart in the attorney's fee area, the Supreme Court case, says you don't have to have a judgment to get fees. We would suggest that should control here. The other – the other issue is whether an enhanced rate is allowable. We – we think that's a legal issue. Is an enhanced rate allowable where you've got evidence in the record that the plaintiff withdrew funds from – from an investment that was drawing 12.65? It's a pure legal issue. We think the Court can decide it, and we would ask the Court to decide both those issues in Mr. Day's favor. That's all I have at this point. I'd like to reserve, I guess, I've got 30 seconds left. All right. We'll give you a whole minute. Sir? We'll give you a whole minute. Thank you. Good afternoon. May it please the Court, Stephen Harris representing the defendant, AT&T, disability income plan. I think just real briefly with respect to Day's counsel's assertion that AT&T essentially tried to railroad him into filing his claim for LTD benefits within a nine-day period of time. That's not what the record suggests at all. ER 356 says, dated April 29th, please find and close the packet from AT&T for long-term disability benefits. Please return it to us by May 9th. Right. Next paragraph. If you and your client are not able to, please let me know, and we will work with you to find a mutually acceptable date that will still give the claims administrator sufficient time to review Mr. Day's claim. What's the date of that letter? The date of that letter is April 29th, 2008, Your Honor. Right. So that's shortly before the first ruling. That's correct. What about the computer entry that I was mentioning earlier? The computer entry was before the litigation was filed, Your Honor. Right. And at that point in time, I have my dates off perhaps a little bit. I believe Mr. Day was 26 weeks into the short-term disability period. As a precondition to receiving LTD benefits, you have to have been short-term disabled for 52 weeks. And therefore, you cannot submit a claim for long-term disability benefits until you're through that exhaustion period, which makes sense because, of course, the plan administrator is not going to be able to look at evidence at 26 weeks and decide whether the person is going to be disabled in 26 more weeks. That's not what the computer entry said, though. Which computer entry? I'm sure we're referring to the same one. There's just the one where the plan administrator seemed to indicate that he wasn't going to be eligible unless he had completed the qualified for short-term disability, which would require that he be employed and that he receive all of it, the whole year. That's correct. He had to receive 52 weeks of short-term disability benefits before being eligible for long-term disability. He's already been terminated. It has nothing to do with whether his employment is terminated or not. Did you read the – but you know the computer entry I'm referring to, counsel. I'm just trying to give you an opportunity to respond if you want to respond. Do you have a record citation? I did this morning. I can probably fish it out for you if you want to continue with your argument. Thank you, Your Honor. I view this case as I think plaintiff's counsel did and certainly as the district court did, really being about two cases, short-term disability and long-term disability. Plaintiff's counsel filed a motion for attorney's fees with respect to short-term disability, received them, moved on, litigated on long-term disability, and the end, lost on every issue relating to long-term disability. Plaintiff claims that Webb stands for the proposition that if you win on any issue, you're entitled to fees on all issues. I think the Ninth Circuit in this case decided that issue by implication when it denied his motion, when it ruled that he was not entitled to attorney's fees with respect to the LTD offset motion for summary judgment. The court ruled that he lost on that issue and therefore was not entitled to fees by implication already determining that the mere procedural victory or the mere victory in short-term disability benefits had nothing to do with his entitlement to fees with respect to long-term disability. If we step back just a moment and take a look at the way this case arrived procedurally, the short-term disability case was properly before the district court. As we pointed out in the district court agreed, plaintiff failed to exhaust his long-term disability administrative remedies. The court stayed the case and said if you want to go exhaust, go exhaust. The court could have and probably should have dismissed the case at that point in time. And there's no question had the court dismissed the case at that point in time that he would not be entitled to attorney's fees for any time spent on the process. CAN-CON stands clearly for the proposition that pre-litigation, administrative process, attorney's fees are not recoverable. Counsel, the record I was trying to fish out is at ER-322 to 323. It's probably the page you want to look at. And there's some code, an abbreviation. So if I'm misreading it, I really invite you to point that out to me. Are you reading the last entry, Your Honor? I'm reading the entry dated 9-14-2005. Reviewed that E.E. would have to be on SD, which I assume is short-term disability, for 52 weeks and that he would need to still be an employee. He said he believes that employee has been terminated. Reviewed that employee, no longer active employee, would not have met the 52 weeks of short-term disability. I do see that, Your Honor. And I honestly have no response to that other than to mention that's exactly why we have the administrative claims process. Had the plaintiff filed a claim for disability benefits at 52 weeks, this would have all gotten squared away, just as it did during the court-ordered remand. Thank you. And so what we know is during the remand, if plaintiff had the case been dismissed and the plaintiff had filed his application for LTD benefits, they would have been granted, as they were granted, but they would have been granted with an offset for the pension benefits. And what would have happened at that point in time is plaintiff would have had the ability to appeal through the administrative process to have the claims administrator determine whether that offset was proper, which is exactly what happened during the second stage of what we call the remand or the stay during the district court proceedings as to LTD. And only at that point in time, after the claims administrator had decided that the offset was proper and the long-term disability benefits should have been challenged that determination. The mere fact that he jumped the gun, filed a lawsuit, and the court found that he wasn't properly before the court for failing to exhaust it should not entitle him to attorney's fees, because he wouldn't have been entitled to them had he gone through the proper process. You can't reward a plaintiff for dodging ERISA's exhaustion requirements. With respect to the first fee award that Mr. Day is now challenging, I think that probably, if it merged into anything, merged into the court's first judgment, which the Ninth Circuit has already ruled on. And I think now it's probably too late for Mr. Day to come to court and say, I'd like you to reconsider what the court did on the first fee award. Secondly, he didn't raise the first fee award in his notice of appeal. The notice of appeal is pretty clear. It's appealing the amended judgment with respect to the second fee order and the prejudgment interest issue. I don't see any notice in there at all about the first fee award whatsoever. However, the first time that came up is when a plaintiff filed his appellate brief, and I think that that supports a waiver at this point in time. He certainly led defendants to believe that he wasn't going to challenge the first fee award ever since the hearing on the fee award, which he voluntarily stated, I'm not going to object to whatever the court orders me. I'll be happy with whatever I get. And here we are five years later, and he files a notice of appeal. Not the notice of appeal, but he files his opening brief challenging that. I mean, there's extreme prejudice to defendants. Lots of time has passed. Records and memories haven't been reduced to writing.  Kagan, you're up. Focused in on just for a moment the request for $450, which the magistrate found to be appropriate. Right. That's exactly what Mr. Nichols requested. In his brief, he said, I would like a market rate between 450 and $500. At the hearing, one of the issues that came up was, gee, should we consider the fact that you billed $400 to your clients during this point in time? The judge, the magistrate said, it seems to me that that is an incredibly relevant inquiry, isn't it? And Mr. Nichols responded, yeah, it's relevant. It could be relevant. What's your response, counsel, to opposing counsel's argument about the reduction of hours? Well, I think, well, first of all, that's an issue that should have been resolved the last time this case was before the Ninth Circuit, because the first fee order merged into the judgment that actually was appealed. So I think, and he's waived it by not noticing this issue on the notice of appeal. But if we look through all that and we focus in on the hours reduction, what point of claims is that the district court magistrate judge abused her discretion because she relied exclusively on three other cases in determining the reasonable amount of fees? What the court had to do was first, in its discretion, decide whether fees were proper, and then decide if fees were proper, what amount of fees were proper. Plaintiff Day claims that defendant never complained about any specific hours, but that's not true. If you look at the motions, you know, it's very clear that there's time that was described as being duplicative. Defendants pointed out that while prior counsel had spent roughly 15 hours reviewing documents, Plaintiff Nichols spent 29 hours reviewing those exact same documents. There were 300 hours billed on the motion for summary judgment, despite the fact that there was already a 41-page mediation brief in existence that prior counsel had prepared in I think it was 70 hours. The court looked at the fact that prior counsel had done some of subsequent counsel's work for him through the process of preparing the mediation brief, took into account that Mr. Nichols billed for work that had already been done by prior counsel, and billed more hours for it. And the court also found that plaintiff's counsel had engaged in a practice of block billing and noted that the jurisprudence suggests that a reduction of up to 30 percent for block billing would be appropriate. And taking all that into consideration also took a look at other cases that the magistrate judge decided were of similar nature and similar procedural posture, if not more complex cases, and said, you know what, I'm going to reduce the hours based on these other issues about inefficiency in the case, but I'm not going to reduce it below where the other cases' averages are. And I read the order suggesting that if the averages had been lower, that the magistrate would have reduced hours by more, but she chose not to do that. And I certainly am not aware of any case that stands for the proposition that it is an abuse of discretion to take a look at what other attorneys in similar cases have billed, and the magistrate exercised her discretion properly in deciding the reasonable amount of hours that should be compensated in this litigation. On the question of the appropriate rates, I gather there was no testimony as to what the market rate was. Is that true? There was no oral testimony. Plaintiff's counsel had submitted declarations, I believe six declarations, if my memory serves correctly, and five of the six opined that 450 would be a reasonable hourly rate for plaintiff's counsel. And so when we focus in on the rate, plaintiff's counsel asked the Court for between 450 and $500 as a reasonable market rate, and that's exactly what he got. He got what he wanted. I don't think he should be permitted at this point in time to complain that the magistrate judge gave him what he asked for. Well, the magistrate judge also said, well, that's what AT&T stipulated to. I would, I gather standing alone you would agree that that would be an insufficient rationale for determining market rate. I think that the magistrate judge was referencing the fact that we had stipulated that rate. Had agreed to 450. You had agreed to accept 450. You did stipulate. We had agreed not to challenge 450. Right. And I think the magistrate judge was saying, look, they haven't challenged I'm certainly not going below that. I don't think the magistrate judge said because they have stipulated or not challenged 450, that's the reason I'm going to find that to be a market rate. The magistrate judge, I believe, found that between 350 and 500 would be supported as a market rate. Plaintiff's counsel asked for between 450 and 500, and the declarations largely supported a $450 market rate for him. On the interest on the matter of prejudgment interest. Your time is up. You have a little bit of a final issue you want to do in two sentences? I will submit, Your Honor. Thank you. Thank you. Your Honor, I just have five or six points. With respect to the declarations, two, one was 500 plus, one was 550. I think two or three were five. It was one 450 from Ms. Connerton up in Pennsylvania. We had a range of cases and orders we showed in our briefs that showed everything from 350 for a two-year associate to 700 for one attorney. We asked for 500 to 550. Given the range of evidence, what's wrong with 450? Well, we asked for 500 to 550. Well, I know you did. The Court found 500, and then he said because you used to charge 400 and they'll agree to 450, I'm going to give you 450. We asked for five. The declarations supported five. The cases, the orders supported five. He found five, and then he gave us 450 for two reasons that Moreno and Welch say you can't consider. Well, I think he can consider your rate during the period of time. He can consider the rate that you charge. That's it. The case law says that's it. Well, Welch, my impression, Your Honor, of Welch is it says you cannot use the amounts charged by the attorney or the contract between the attorney and the client. With respect to the letter given us nine days, we got a hard copy of that application on the 7th. It was due the 9th. Also, when they denied Mr. Day's STD benefits initially, they denied them within seven days of his first telling them he was disabled based on a four-day review period under their contract with Sedgwick. We felt like, given their prior behavior, that they were going to they may say we'll work with you, but given nine days, they were going to cut us off. We did submit the application prior to, I think during the STD remand process, but prior to the LTD study. And in addition, Allenby and Schwartz, you know, both remanded, or in one, the Court decided it without even a remand when there had been no exhaustion of the LTD benefits. With respect to pre-judgment, oh, the pre-judgment interest issue keeps the court, the judgment alive until it's decided. So pre-judgment interest was not decided until the amended judgment. We didn't have a final judgment until then. Let's see.  Well, the cases say that you don't have to mention every order, every interlocutory order, and as long as you mention it and raise it in your opening brief, then you're fine. All right. Thank you, counsel. Sir? Thank you. And... Well, that was a good try, but... Sir? I think your time is over. Oh, I apologize. It's all right. Thank you. All right. The case just argued will be submitted.
judges: Reinhardt, Thomas, Christen